1
2
3
4                         UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    UNDERWRITERS AT LLOYD'S
     SUBSCRIBING TO COVER NOTE                Case No.  19-cv-02945-PJH
8    B1526MACAR1800089,
9                     Plaintiff,              **ORDER GRANTING MOTION TO
                                              DISMISS**
10        v.
                                              Re: Dkt. No. 87
11   ABAXIS, INC., et al.,
12                    Defendants.
13
14
15        Before the court is cross-defendant's C.H. Robinson Worldwide Inc.'s ("CHR" or

16   "cross-defendant") motion to dismiss.  The matter is fully briefed and suitable for decision

17   without oral argument.  Having read the parties' papers and carefully considered their

18   arguments and the relevant legal authority, and good cause appearing, the court rules as

19   follows.

20                                 **BACKGROUND**

21        The underlying complaint in this action was filed by plaintiff Underwriters at Lloyd's

22   Subscribing to Cover Note B1526MACAR1800089 ("Underwriters" or "plaintiff") on May

23   29, 2019.  Dkt. 1.  As alleged in the operative Second Amended Complaint ("SAC"),

24   plaintiff is a group of insurers who insured a shipment that was damaged en route to

25   Covetrus Inc. and its corporate predecessor Henry Schein Animal Health and Butler

26   Animal Health Supply, LLC (collectively, "Schein").  Dkt. 28, ¶ 3.  The SAC alleges the

27   following claims: (1) breach of contract under the Carmack Amendment against TCSL,

28   Inc. ("TCSL") and CHR; (2) breach of bailment obligations against TCSL; (3)

United States District Court
Northern District of California

1   negligence/gross negligence against TCSL; (4) breach of contract against Abaxis and

2   Zoetis; (5) negligence/gross negligence against Abaxis and Zoetis; and (6) misdelivery

3   against Abaxis and Zoetis.

4        On August 16, 2019, defendants Abaxis, Inc. ("Abaxis") and Zoetis, Inc. ("Zoetis"

5   and together with Abaxis, "defendants") filed a motion to dismiss the SAC.  Dkt. 31.  Prior

6   to the court's order on the motion, plaintiff voluntarily dismissed its claims against both

7   TCSL and CHR, (Dkts. 35, 38), and the court denied defendants' motion to dismiss on

8   November 20, 2019, (Dkt. 40).  Defendants Abaxis and Zoetis then filed an answer and

9   crossclaim against TCSL and CHR, (Dkt. 42), to which CHR filed a motion to dismiss,

10  (Dkt. 56), and the court granted on April 6, 2020, (Dkt. 63).  On April 27, 2020,

11  defendants filed an amended crossclaim, (Dkt. 66), as well as a motion for leave to file a

12  second amended crossclaim to add new claims against TCSL and CHR, (Dkt. 67).  The

13  court granted the motion, (Dkt. 81), and defendants filed the second amended

14  crossclaim, ("SACC") on June 16, 2020, (Dkt. 82).

15       According to the SAC, in 2018, Schein contracted with defendant Abaxis[1] to

16  provide a consignment of pharmaceutical products from Abaxis, located in Union City,

17  California to Schein, located in Columbus, Ohio.  SAC ¶ 9.  On or after August 16, 2018,

18  Abaxis tendered shipment of the pharmaceutical products to defendant TCSL.  Id. ¶ 9.

19  Defendant (and now cross-defendant) CHR agreed to be responsible for transporting the

20  shipment, issued a bill of lading covering the shipment, managed all communication

21  between Schein and TCSL, and took responsibility for TSCL's performance.  Id. ¶ 16.

22       The shipment was required to be maintained at a temperature of between 2 and 8

23  degrees Celsius (between 36.5 and 46.4 degrees Fahrenheit) and failure to maintain the

24  proper temperature would render the pharmaceutical products unsafe and unusable.  Id.

25  ¶ 11.  As part of its contract with Schein, Abaxis agreed to verify that the carrier to which

26  Abaxis tendered the shipment was aware that the shipment needed to maintained at the

27  _____

28  [1] At some later point in time, defendant Zoetis merged with Abaxis and plaintiff alleges
that Zoetis has agreed to assume the liabilities of Abaxis.  SAC ¶¶ 63–65.

United States District Court
Northern District of California

1   requisite temperatures, that the carrier was capable of transporting at the requisite

2   temperature range, and that the carrier in fact set the transportation apparatus at the

3   appropriate temperature.  Id. ¶ 32.

4       Plaintiff alleges that defendant TCSL did not pre-chill its trailer to the proper

5   temperature, did not activate its refrigeration equipment until a day after it received the

6   shipment, and turned off the refrigeration equipment a day prior to delivery.  Id. ¶¶ 17–19.

7   The pharmaceutical products were severely damaged as a result of the exposure to

8   higher temperatures resulting in damage of approximately $600,000.  Id. ¶ 20.  Schein

9   sought payment under its insurance contract, which plaintiff paid to Schein.  Id. ¶ 21.

10      The SACC alleges facts beyond those in the SAC.  According to the SACC, CHR

11  hired TCSL to transport a separate load of products from Abaxis than the shipment to

12  Schein and, at all times, CHR managed, supervised, and took responsibility for TCSL's

13  conduct.  SACC ¶ 14.  On August 16, 2018, TCSL's employee arrived at Abaxis's

14  warehouse and wrongfully took possession of the shipment in question, claiming to be

15  authorized to do so without any such authorization.  Id. ¶ 16.  The employee signed and

16  initialed the bill of lading on behalf of the intended shipper, FedEx Custom Critical, (id.

17  ¶ 18), and in reliance on the employee's representations, Abaxis allowed him to load the

18  shipment onto his truck and depart, (id. ¶ 19).  Abaxis alleges that it confirmed the

19  refrigeration unit on this employee's truck was turned on and operating at the requisite

20  temperature before allowing him to load and take the shipment.  Id. ¶ 24.

21      Defendants Abaxis and Zoetis bring six claims against both TCSL and CHR: (1)

22  negligence; (2) conversion; (3) negligent misrepresentation; (4) negligent interference

23  with prospective economic advantage; (5) equitable indemnification; and (6) contribution.

24  CHR moves to dismiss the crossclaim pursuant to Rules 12(b)(1) and 12(b)(6).  Dkt. 87.

25                          **DISCUSSION**

26  **A.   Legal Standard**

27      **1.   Rule 12(b)(1)**

28      A federal court may dismiss an action under Federal Rule of Civil Procedure

United States District Court
Northern District of California

1    12(b)(1) for lack of federal subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Because

2    "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary

3    affirmatively appears," the burden to prove its existence "rests on the party asserting

4    federal subject matter jurisdiction."  Pac. Bell Internet Servs. v. Recording Indus. Ass'n of

5    Am., Inc., 2003 WL 22862662, at *3 (N.D. Cal. Nov. 26, 2003) (quoting Gen. Atomic Co.

6    v. United Nuclear Corp., 655 F.2d 968, 969 (9th Cir. 1981); and citing Cal. ex rel.

7    Younger v. Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979)).  A jurisdictional challenge may

8    be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)

9    (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).  When the attack is facial, the

10   court determines whether the allegations contained in the complaint are sufficient on their

11   face to invoke federal jurisdiction.  Id.  Where the attack is factual, however, "the court

12   need not presume the truthfulness of the plaintiff's allegations."  Id.

13          When resolving a factual dispute about its federal subject matter jurisdiction, a

14   court may review extrinsic evidence beyond the complaint without converting a motion to

15   dismiss into one for summary judgment.  McCarthy v. United States, 850 F.2d 558, 560

16   (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and

17   testimony, to resolve factual disputes concerning the existence of jurisdiction"); see also

18   Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's

19   jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as

20   they exist.").  "Once the moving party has converted the motion to dismiss into a factual

21   motion by presenting affidavits or other evidence properly brought before the court, the

22   party opposing the motion must furnish affidavits or other evidence necessary to satisfy

23   its burden of establishing subject matter jurisdiction."  Safe Air for Everyone, 373 F.3d at

24   1039.

25          **2.     Rule 12(b)(6)**

26          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

27   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,

28   1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

4

United States District Court
Northern District of California

a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

For claims that sound in fraud, the complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. "To satisfy Rule 9(b)'s particularity requirement, the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Depot, Inc. v. Caring for Montanans, Inc., 915 F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1124. The party alleging fraud must also

offer "an explanation as to why the statement or omission complained of was false or misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in SEC v. Todd, 642 F.3d 1207, 1216 (9th Cir. 2011).

**B.    Analysis**

The underlying events in this case are relatively straightforward, but the procedural questions presented here are decidedly more complex.  This court previously dismissed Abaxis and Zoetis's crossclaim against CHR for failure to state a claim.  Dkt. 63 at 9.  The original crossclaim alleged only two claims—equitable indemnity and contribution—based on the theory that CHR and TSCL were jointly liable with Abaxis and Zoetis to plaintiff for the breach of contract claim asserted against only Abaxis and Zoetis.  See Dkt. 42, ¶¶ 8–14, 22–28.  In their SACC, in addition to the equitable indemnity and contribution claims, defendants allege four new causes of action against each of CHR and TCSL: negligence, conversion, negligent misrepresentation, and negligent interference with prospective economic advantage.  In its motion to dismiss, CHR renews its argument that defendants cannot assert equitable indemnity or contribution against it.  Mtn. at 8–11.   CHR also advances three arguments applicable to all four tort claims asserted for the first time in the SACC: that TCSL is the alleged wrongdoer, economic loss doctrine bars recovery, and the court lacks subject matter jurisdiction.  Id. at 11–14.  The court addresses subject matter jurisdiction first.

**1.    Subject Matter Jurisdiction**

CHR asserts that the court does not have subject matter jurisdiction over defendants' crossclaim.  According to CHR, both TCSL and Abaxis are citizens of California, there is no complete diversity of citizenship, and thus no subject matter jurisdiction over the crossclaim.  Id. at 14.  In response, defendants argue that if a Rule 13 crossclaim arises out of the same subject matter as the original action, involves the same persons and issues, and the court has subject matter jurisdiction over the original action, then no independent basis for jurisdiction for the crossclaim need be alleged.

United States District Court
Northern District of California

1    Opp. at 24 (citing <u>Glens Falls Indem. Co. v. United States ex rel. & to Use of</u>

2    <u>Westinghouse Elec. Supply Co.</u>, 229 F.2d 370, 374 (9th Cir. 1955)).

3         All parties agree that because Abaxis and Zoetis's crossclaim, as currently

4    alleged, does not maintain complete diversity between defendants (Abaxis is a California

5    citizen) and cross-defendants (TCSL is a California citizen), the court cannot exercise

6    original jurisdiction over the crossclaim pursuant to title 28 U.S.C. § 1332.[2]  In order to

7    exercise jurisdiction over the crossclaim, defendants must demonstrate that the court

8    should exercise its discretion and assert jurisdiction pursuant to the supplemental

9    jurisdiction statute.

10        The supplemental jurisdiction statute provides that

11             Except as provided in subsections (b) and (c) or as expressly
               provided otherwise by Federal statute, in any civil action of
12             which the district courts have original jurisdiction, the district
               courts shall have supplemental jurisdiction over all other claims
13             that are so related to claims in the action within such original
               jurisdiction that they form part of the same case or controversy
14             under Article III of the United States Constitution.   Such
               supplemental jurisdiction shall include claims that involve the
15             joinder or intervention of additional parties.

16   28 U.S.C. § 1367(a).  Supplemental jurisdiction "is a doctrine of discretion, not of

17   plaintiff's right."  <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).

18   Supplemental jurisdiction "may be exercised when federal and state claims have a

19   'common nucleus of operative fact' and would ordinarily be expected to [be tried] all in

20   one judicial proceeding."  <u>Osborn v. Haley</u>, 549 U.S. 225, 245 (2007) (alteration in

21   original) (quoting <u>Gibbs</u>, 383 U.S. at 725)).

22        There does not appear to be any dispute that court has original jurisdiction over

23   the underlying action between plaintiff Underwriters and defendants Abaxis and Zoetis.

24   According to the SAC, Underwriters is incorporated and has its principal place of

25   business in the United Kingdom, (SAC ¶ 3), Abaxis is incorporated and has its principal

26   place of business in California, (<u>id.</u> ¶ 5), and Zoetis is incorporated in Delaware and has

27   _____

28   [2] The SACC only alleges jurisdiction on the basis of section 1332, (SACC ¶ 1), and the
     court is satisfied there is no federal question jurisdiction implicated by the crossclaim.

1    its principal place of business in New Jersey, (id. ¶ 6).  The amount in controversy is at

2    least $600,000, (id. ¶ 88), and, therefore, the original action meets the requirements for

3    diversity jurisdiction, 28 U.S.C. § 1332.

4         At this point in the analysis, the court requested, (Dkt. 94), and the parties filed

5    supplemental briefing[3] on two questions: whether CHR was properly named as cross-

6    defendant under Rule 13(g) and whether the court could exercise supplemental

7    jurisdiction.  Those questions directly implicate section 1367(b), which precludes

8    supplemental jurisdiction "over claims by plaintiffs against persons made parties under

9    Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising

10   supplemental jurisdiction over such claims would be inconsistent with the jurisdictional

11   requirements of section 1332."  28 U.S.C. § 1367(b).

12                  a.       **Whether CHR Was Properly Joined Pursuant to Rule 13(g)**

13        The court's request for supplemental briefing pointed out that defendants'

14   crossclaim against CHR may not have been properly within the scope of Rule 13(g)

15   because, at the time defendants filed their crossclaim, CHR had been dismissed from the

16   case and was no longer a "coparty" as required to assert a crossclaim.  Dkt. 94 at 3.  If

17   CHR should have been joined (or re-joined as it were) to this action by a different Federal

18   Rule of Civil Procedure, then such a fact would potentially implicate title 28 U.S.C.

19   § 1367(b), which prohibits supplemental jurisdiction over parties added by Rules 14, 19,

20   or 20 and where, as here, original jurisdiction rests on the diversity jurisdiction statute,

21   § 1332.

22        Federal Rule of Civil Procedure 13 provides that "[a] pleading may state as a

23   crossclaim any claim by one party against a coparty . . . ."  Fed. R. Civ. P. 13(g).  "Courts

24   have consistently held that '[a] cross-claim cannot be asserted against a party who was

25   dismissed from the action previous to the assertion of the cross-claim.'"  In re Latex

26   Glove Prod. Liab. Litig., 373 F. Supp. 2d 1205, 1207 (W.D. Wash. 2005) (alteration in

27

28   _____

     [3] At the court's invitation, plaintiff Underwriters also filed a supplemental brief.  Dkt. 95.

                                          8

United States District Court
Northern District of California

original) (quoting <u>Wake v. United States</u>, 89 F.3d 53, 63 (2d Cir. 1996)); <u>see also</u> 6 Wright & Miller, <u>Fed. Prac. & Proc.</u>, § 1431 (3d ed. 2020) ("[A] crossclaim may only be asserted against coparties in the action.  No crossclaim may be brought against a person who has been eliminated or who has withdrawn from the action, since that person no longer is a party." (footnotes omitted)).  This rule applies here.  Defendants could not assert a Rule 13(g) crossclaim against either TCSL or CHR, who were dismissed from the action by plaintiff prior to the filing of the crossclaim.

In their supplemental brief, defendants cite two cases as standing for the proposition that courts have held that crossclaims may be maintained against dismissed coparties despite their dismissal.  Dkt. 99 at 3.  Neither case applies here because in both cases, the crossclaim was asserted prior to the dismissal of the coparty.  In <u>United States v. United States Trust Co.</u>, 106 F.R.D. 474, 476 (D. Mass. 1985), one of the defendants had already crossclaimed against a separate defendant, who the plaintiff sought to dismiss in an amended complaint.  In granting the motion for leave to amend, the court determined that it could retain jurisdiction over the already pleaded crossclaim despite the voluntary dismissal of the cross-defendant.  <u>Id.</u> at 477.  Similarly, in <u>Adams v. NVR Homes, Inc.</u>, 135 F. Supp. 2d 675, 708 (D. Md. 2001), the district court determined that even though the plaintiffs removed a cross-defendant in an amended complaint, the cross-defendant was a proper party to an amended crossclaim because the crossclaim was "previously interposed", i.e., already existing, against the cross-defendant before his subsequent dismissal by the plaintiffs.

Next, defendants argue that, if the court determines Rule 13(g) to be inapplicable, their claim should still proceed under Rule 14.  Dkt. 99 at 5.  A third-party claim under Rule 14 is appropriate "when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative.  It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim."  <u>United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538</u>, 708 F.2d 444, 452 (9th Cir. 1983) (citations omitted); <u>see</u>

9

Fed. R. Civ. P. 14(a) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."). Similar to Rule 13, the purpose of Rule 14 is to "promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." Sw. Adm'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir. 1986) (citation omitted).

The court agrees with defendants' general proposition that, if they can establish that CHR's liability is in some way dependent on the outcome of the main claim and CHR's liability is secondary or derivative of defendants' liability, then Rule 14 is appropriate here.[4] The allegations in the SACC pertain to the same common nucleus of operative fact as the SAC such that judicial economy would be served by trying the cases together. Further, Abaxis and Zoetis bring an equitable indemnity claim and a contribution claim, which are typical derivative claims in a third-party complaint. See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 805 (6th Cir. 2008) ("The third-party complaint is in the nature of an indemnity or contribution claim.").

Rule 14's derivative claim requirement implicates defendants' newly alleged tort claims. Defendants argue their negligence, conversion, misrepresentation, and interference with prospective economic advantage claims are also dependent on the outcome of plaintiff's claims. Dkt. 99 at 8. While these claims certainly implicate the same general fact pattern as plaintiff's breach of contract claim, defendants cite no authority that the new tort claims establish CHR's derivative liability to Abaxis and Zoetis

---

[4] Abaxis and Zoetis filed their original answer and crossclaim in the same document on December 4, 2019. Dkt. 42. The Clerk of Court's office issued a summons for CHR, (Dkt. 44), and defendants filed an executed waiver of service on January 3, 2020, (Dkt. 47). This sequence of events underscores the fact that, had defendants' action been properly labeled as a third-party complaint under Rule 14, defendants would have met the timing requirement of Rule 14(a)(1) and did not need the court's leave to file the third-party complaint. At the same time, the fact that a summons and complaint was issued and served reinforces the court's conclusion that, at the time of service, CHR was not a party to the case and could not have been subject to a Rule 13 crossclaim.

United States District Court
Northern District of California

1   for plaintiff's breach of contract claim.  Indeed, "Rule 14(a) does not allow a third-party

2   complaint to be founded on a defendant's independent cause of action against a third-

3   party defendant, even though arising out of the same occurrence underlying plaintiff's

4   claim, because a third-party complaint must be founded on a third party's actual or

5   potential liability to the defendant for all or part of the plaintiff's claim against the

6   defendant.  Am. Zurich Ins., 512 F.3d at 805 (citing United States v. Olavarrieta, 812 F.2d

7   640, 643 (11th Cir. 1987)); see also Gandy v. Shaklan-Brown, 2008 WL 4446708, at *2

8   (D. Ariz. Sept. 30, 2008) (denying motion to add third party complaint where defendant

9   alleged third-party misrepresentation and fraud claims there were "transactionally related

10  to the plaintiff's claims" but find the claims were not wholly dependent on outcome of

11  main claims).  Thus, the viability of defendants' third-party claim rises and falls on the

12  viability of their equitable indemnity and contribution claims, addressed below.

13          **b.      Whether the Court Should Exercise Supplemental Jurisdiction**

14          The court agrees with defendants that exercising supplemental jurisdiction is

15  appropriate in this case.  First, Abaxis and Zoetis's claims derive from the same "common

16  nucleus of operative fact," Osborn, 549 U.S. at 245, as plaintiff's claims in the SAC.  CHR

17  contends the original action involves only a contractual dispute between plaintiff and

18  Abaxis, (Reply at 15), but this is an overly narrow view of the operative facts.  The

19  common nucleus of operative fact in both the original action and the crossclaim is the

20  alleged mishandling of the shipment from Abaxis to Schein.  The breach of contract claim

21  is predicated on damage to that shipment as are defendants' tort and indemnification

22  claims.

23          Having determined there is supplemental jurisdiction over defendants' claims

24  under section 1367(a), the court next considers whether section 1367(b) divests it of

25  supplemental jurisdiction.  The court finds persuasive Abaxis and Zoetis's argument that

26  the court can exercise supplemental jurisdiction.[5]  While the Ninth Circuit has not

27

28  _____
    [5] CHR concedes that section 1367(b) does not apply.  Dkt. 98 at 6 n.1.

1   addressed the issue, several courts of appeal have held that section 1367(b)'s use of the

2   term "claims by plaintiffs" only refers to the original plaintiffs and not defendants who then

3   assert a crossclaim or third-party claim.  Allstate Interiors & Exteriors, Inc. v. Stonestreet

4   Const., LLC, 730 F.3d 67, 73 (1st Cir. 2013) (collecting cases).  As explained by the Sixth

5   Circuit, [t]he supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states

6   congressional intent to prevent original plaintiffs—but not defendants or third parties—

7   from circumventing the requirements of diversity."  Grimes v. Mazda N. Am. Operations,

8   355 F.3d 566, 572 (6th Cir. 2004).  Accordingly, because defendants Abaxis and Zoetis

9   are not the original plaintiffs, section 1367(b) does not defeat supplemental jurisdiction in

10  this case.

11          Finally, the court considers whether to decline to exercise supplemental

12  jurisdiction pursuant to section 1367(c).  Both CHR and plaintiff Underwriters argue that

13  the court should decline to exercise supplemental jurisdiction over Abaxis and Zoetis's

14  claims.  Underwriters contends that defendants' claims would substantially predominate

15  over its claim because their only remaining claim is a breach of contract claim involving

16  interpretation of a written contract while defendants' tort claims will be more complex and

17  fact intensive.  Dkt. 95 at 5.  CHR joins in plaintiff's arguments.  Dkt. 98 at 7.  Defendants

18  respond that there is no concern that state law claims would predominate over federal

19  claims because all remaining claims are state law claims.  Dkt. 99 at 10.

20          The court finds that, as alleged, defendants' claims would not predominate over

21  plaintiff's claim.  While the breach of contract claim may not require a fact-intensive

22  inquiry, it is plausible that the affirmative defenses raised by defendants will implicate

23  similar facts as defendants' third-party claims against CHR.  See, e.g., SACC ¶ 97 (third

24  party negligence).  In sum, this court has supplemental jurisdiction over defendants'

25  claims, and proceeds to consider the merits of their equitable indemnification and

26  contribution claims.

27          **2.      Fifth Claim—Equitable Indemnification**

28          Abaxis and Zoetis's fifth claim is for equitable indemnification.  SACC ¶¶ 71–75.

The doctrine of equitable indemnity "permit[s] a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." Am. Motorcycle Ass'n v. Superior Ct., 20 Cal. 3d 578, 598 (1978).  To assert equitable indemnity there must be a joint legal obligation to the injured party, i.e., "there can be no indemnity without liability." Prince v. Pac. Gas. & Elec. Co., 45 Cal. 4th 1151, 1165 (2009) (citation omitted).

In its prior order granting CHR's motion to dismiss, the court determined that the allegations in the SAC demonstrated that plaintiff Underwriters could only recover against defendants Abaxis and Zoetis for breach of contract.  The court rested its conclusion on two observations.  First, while plaintiff previously alleged a cause of action sounding in tort against defendants, the SAC voluntarily dismissed that cause of action and only alleged a breach of contract claim against Abaxis and Zoetis.  Dkt. 63 at 7.  Second, despite plaintiff's factual allegations against defendants alleging that Abaxis was negligent and breached its duties to Schein, those allegations merely recast the alleged breach of contract as a breach of a legal duty of care. Id.  The court applied the rule from Robinson Helicopter, 34 Cal. 4th at 991–92 (quoting Freeman & Mills, Inc. v. Belcher Oil Co. 11 Cal. 4th 85, 107 (1995) (Mosk, J., concurring in part)), that "courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."  In other words, even if plaintiff had not voluntarily dismissed its tort cause of action against defendants, plaintiff had not alleged a violation of a duty independent of the contract that would allow it to recover in tort.  Dkt. 63 at 7.

Assuming plaintiff could not state a tort claim against Abaxis, the question then became whether Abaxis could seek equitable indemnification against CHR.  "California law does not permit apportionment of damages for breach of contract." Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp., 143 Cal. App. 4th 1036, 1040–42 & n.2 (Ct. App. 2006); see also Miller v. Sec. Life of Denver Ins. Co., 2012 WL 1029279, at *5 (N.D. Cal. Mar. 26, 2012) ("A claim for equitable indemnity requires a tort claim asserted by the

United States District Court
Northern District of California

original plaintiff against the proposed indemnitee on which to base joint and several

liability, between the proposed indemnitor and indemnitee."). The predicate for an

equitable indemnification claim is that the proposed indemnitor and indemnitee are joint

tortfeasors. See, e.g., Jocer Enters., Inc. v. Price, 183 Cal. App. 4th 559, 573 (Ct. App.

2010) ("[N]either traditional equitable indemnity nor implied contractual indemnity is

available 'in the absence of a joint legal obligation to the injured party.'" (quoting Prince,

45 Cal. 4th at 1160–61)). The court reasoned that if plaintiff could not bring a tort claim

against Abaxis, then Abaxis could not be a tortfeasor, CHR could not be a joint tortfeasor

with Abaxis, and Abaxis failed to state a claim for equitable indemnity. Dkt. 63 at 7–8.

In its current motion, CHR restates, essentially verbatim, the court's prior order in

support of its argument that defendants cannot state a claim against CHR for equitable

indemnification or contribution. See Mtn. at 8–11. In response, defendants argue that an

indemnitee sued in contract can assert claims for equitable indemnity. Opp. at 8.

Defendants acknowledge that both an indemnitor and indemnitee must have some legal

obligation to the plaintiff; however, they argue that, where an indemnitor's tort results in

harm to a third party, equitable indemnity does not require that the indemnitee also be

sued in tort by the same third party. Id. at 10. In this case, defendants, as indemnitees,

would be able to plead an equitable indemnity claim against CHR, as indemnitor,

because CHR allegedly violated a legal duty to Schein and Schein sued defendants.

Defendants also distinguish Stop Loss's holding, arguing that it does not rely on

any determination concerning the tort liability of the indemnitee and its holding should be

limited to situations when a tort obligation exists for the indemnitor. Id. at 10–11. Finally,

defendants discuss at length a 2019 California Court of Appeal decision, PCAM, LLC v.

Bally Total Fitness of California, Inc., 2019 WL 2265583 (Cal. Ct. App. May 28, 2019),

which they contend stands for the proposition that a cross-claimant can recover on an

equitable indemnity claim against a cross-defendant for a breach of contract claim. See

id. 11–15.

The common law of equitable indemnification arose in the context of multiple

14

tortfeasors.  Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1353–54 (Ct. App. 1994) ("The common law equitable indemnity doctrine relates to the allocation of loss among multiple tortfeasors." (citing Am. Motorcycle Ass'n, 20 Cal. 3d at 583, 592)). Further, the doctrine applies only among defendants who are jointly and severally liable to the plaintiff.  BFGC Architects Planners, Inc. v. Forcum/Mackey Const., Inc. ("BFGC"), 119 Cal. App. 4th 848, 852 (Ct. App. 2004) (citing GEM Developers v. Hallcraft Homes of San Diego, Inc., 213 Cal. App. 3d 419, 430 (Ct. App. 1989)).  To restate the court's prior finding, contractual liability is not sufficient under California law to plead equitable indemnity.  Dkt. 63 at 6.  That point is evident from the discussion between the majority and concurring opinions in Stop Loss.  As stated by the majority opinion, "California law does not permit equitable apportionment of damages for breach of contract . . . ."  Stop Loss, 143 Cal. App. 4th at 1041 n.2.

The Stop Loss concurring opinion cited the New Mexico Supreme Court's opinion in In re Consolidated Vista Hills Litigation ("Amrep"), 893 P.2d 438 (N.M. 1995), where the court "permitted an indemnity claim by a building contractor against a materials supplier even though the two were not joint tortfeasors and the sole loss in question was economic."  Stop Loss, 143 Cal. App. 4th at 1053 (Pollak, J., concurring in the judgment). As described by the concurring opinion, Amrep modified the "common-law right to indemnification when an indemnitee has been adjudged liable for full damages on a third-party claim that was not susceptible under law to proration of fault among concurrent tortfeasors."  Id. (quoting Amrep, 893 P.2d at 448–49).  The concurring opinion summarized the current state of New Mexico law: "After Amrep . . . a defendant liable in contract may seek proportional indemnity based on principles of comparative fault in the same way a defendant jointly and severally liable in tort can seek comparative contribution."  Id. (citation omitted).

The critical point for purpose of this opinion, however, is not so much the current state of New Mexico law, but that the concurring opinion explicitly acknowledged that equitable apportionment of damages in contract actions is not the law in California:

United States District Court
Northern District of California

1
2
3
4

> [a]lthough there may be good reason to [extend equitable indemnification to contractual defendants], any fundamental change should come from our Supreme Court, or from the Legislature.  Absent such a change, I agree with the majority that we must adhere to the rule that equitable indemnity may be obtained only from one who is jointly and severally liable to the injured party <u>based on the commission of a tort</u>.

5  <u>Id.</u> at 1054–55 (emphasis added); <u>see also</u> <u>In re Med. Capital Sec. Litig.</u>, 842 F. Supp. 2d

6  1208, 1213 (C.D. Cal. 2012) (citing <u>Stop Loss</u> concurring opinion and stating "[i]t is

7  extremely telling that even a proponent of an expansive equitable indemnification

8  doctrine recognizes that there is presently no legal basis for such an extension").

9          Defendants attempt to distinguish <u>Stop Loss</u> as only focusing its analysis on

10  whether a tort obligation existed for the indemnitor and the <u>Stop Loss</u> court did not

11  examine or discuss whether the indemnitee in question must have a tort duty.  Opp. at

12  10.  The district court in <u>In re Medical Capital Securities Litigation</u>, 842 F. Supp. 2d at

13  1213, rejected a similar argument, reasoning "[a]s the <u>Stop Loss</u> court made clear, both

14  the party seeking indemnification and the party from which it seeks indemnification must

15  be tortfeasors."

16          Other courts have also rejected equitable indemnity claims based on an underlying

17  breach of contract claim.  <u>See</u> <u>Zurich Am. Ins. Co. of Ill. v. VForce Inc.</u>, 2020 WL

18  2732046, at *9 (E.D. Cal. May 26, 2020); <u>see also</u> <u>Tesoro Ref. & Mktg. Co. LLC v. Pac.</u>

19  <u>Gas & Elec. Co.</u>, 2014 WL 4364393, at *7 (N.D. Cal. Aug. 29, 2014) ("Breach of that

20  contractual duty—even if negligent—does not give rise to tort liability and cannot support

21  a claim for equitable indemnity."); <u>Travelers Cas. & Sur. Co. of Am. v. Desert Gold</u>

22  <u>Ventures, LLC</u>, 2010 WL 5017798, at *15 (C.D. Cal. Nov. 19, 2010) ("[W]hatever losses

23  [defendants] incur as a result of their breach of the [contract] are theirs alone, not subject

24  to apportionment.").

25          Defendants cite <u>PCAM, LLC v. Bally Total Fitness of California, Inc.</u>, 2019 WL

26  2265583, as a case where the California Court of Appeal permitted an equitable

27  indemnity claim against an indemnitor where the indemnitee was sued in contract.  In that

28  case, one of the defendants argued that, under <u>Stop Loss</u>, it could not be liable for

equitable indemnification with respect to a settlement paid in a different case because it was a contract action, not a tort action. Id. at *18. The Court of Appeal stated that the cross-defendant's "view of equitable indemnity is too constricted by far" and the underlying claim was based in tort. Id. at *18–19. Thus, "none of the damages [the defendant] sought to recover, including its settlement payment to [the plaintiff] . . . would have been incurred were it not for the alleged negligence . . . that caused [the plaintiff's] injuries. Id. at *19.

PCAM does not call into question the rule from Stop Loss; rather, the PCAM court determined that Stop Loss did not apply on the facts presented because the plaintiff in that case had no contractual privity with any of the parties (he was attacked in a parking lot) and there was a basis for tort liability against the defendant. Id. at *18–19. The breach of contract claim arose afterword, relating to a settlement that resolved the underlying tort claim. Here, Schein and Abaxis were in contractual privity before the events in question took place and that relationship governs the rights and duties of the parties. For that reason, this case falls squarely within the Stop Loss rule and PCAM is inapplicable. Defendants cannot state a claim for equitable indemnity against CHR.

For the foregoing reasons, CHR's motion to dismiss Abaxis and Zoetis's claim for equitable indemnity is GRANTED. Because California law prohibits the cause of action, the claim is DISMISSED WITH PREJUDICE.

### 3.    Sixth Claim—Contribution

Defendants' sixth claim is for contribution. California Civil Procedure of Code § 875(a) provides "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided." The right of contribution thus does not come into existence until the issuance of a judgment. Sullins v. Exxon/Mobil Corp., 729 F. Supp. 2d 1129, 1138 (N.D. Cal. 2010) (citing Coca–Cola Bottling Co. v. Lucky Stores, Inc., 11 Cal. App. 4th 1372, 1378 (Ct. App. 1992)). Of course, there has been no judgment in this case against Abaxis and Zoetis and this claim is premature. Further, as discussed, contribution

United States District Court
Northern District of California

1  requires defendants and CHR to be joint tortfeasors, which for the reasons previously

2  discussed, they are not.

3      Defendants' first through fourth claims relate to torts allegedly committed by

4  TCSL's employee in the scope of his employment and CHR directed TCSL.  As

5  discussed, defendants have not established that these tort claims are derivative of

6  plaintiff's breach of contract claim against defendants, as required by Rule 14.  Therefore,

7  these claims will also be dismissed without prejudice so that defendants may pursue

8  them in an appropriate venue.

9      For the foregoing reasons, CHR's motion to dismiss Abaxis and Zoetis's first

10  through fourth claims and sixth claim is GRANTED and the claims are DISMISSED

11  WITHOUT PREJUDICE.

12                          **CONCLUSION**

13      For the reasons stated, CHR's motion to dismiss is GRANTED, defendants' fifth

14  claim for equitable indemnity is DISMISSED WITH PREJUDICE and all other claims are

15  DISMISSED WITHOUT PREJUDICE.  Because defendants have previously been

16  permitted leave to amend the crossclaim (properly stated as a third-party complaint) and

17  have not identified any further factual matter that would state a claim, further amendment

18  would be futile.  Thus, the dismissal is WITHOUT LEAVE TO AMEND.

19      **IT IS SO ORDERED.**

20  Dated: September 30, 2020

21                          /s/ Phyllis J. Hamilton

22                          PHYLLIS J. HAMILTON
                            United States District Judge

23

24

25

26

27

28